**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| HARTING ELECTRIC STIFTUNG & CO. KG<br><br>        Plaintiff,<br><br>v.<br><br>PHOENIX CONTACT GMBH & CO. KG; PHOENIX CONTACT USA, INC.; and PHOENIX CONTACT DEVELOPMENT AND MANUFACTURING, INC.<br><br>        Defendants. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff HARTING Electric Stiftung & Co. KG (hereinafter "HARTING" or "Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Defendants Phoenix Contact GmbH & Co. KG ("Phoenix Contact"); Phoenix Contact USA, Inc. ("Phoenix USA"); and Phoenix Contact Development and Manufacturing, Inc. ("Phoenix Development") (collectively, "Defendants" or "Phoenix") seeking relief for infringement of U.S. Patent Nos. 12,407,124 (the "'124 patent") and 12,482,985 (the "'985 patent") (collectively, "Asserted Patents"). HARTING states and alleges the following:

**BACKGROUND**

1.      HARTING has a long history of placing the utmost emphasis on quality and innovation to make people's everyday lives easier. HARTING has been producing devices for everyday needs since its founding by the Harting family in the small hall of a repair shop in 1945.

The company's first products were useful everyday items, such as energy-saving bulbs, sought-after hotplates, electric fencing equipment, waffle irons, electric lighters, and clothing irons.

2.      In the 1950s, founder Wilhelm Harting recognized that the emerging German industry needed technical products and began developing innovative technology for power supply. Specifically, he identified the need for development of a connector that would be robust, easy to handle, and applicable for a variety of purposes.

3.      In 1956, the Han® (HARTING Norm) connector made its impressive debut. Due to the high quality, the HARTING brand became renowned in more than 70 countries. To meet further requirements, the product line has been continuously expanded ever since. By now, Han® connectors have become an industry standard. It was patented in 1956 and officially registered as a trademark in 1957.

4.      Three generations later, HARTING is now one of the world's leading suppliers of industrial connection technology. HARTING develops, manufactures, and supplies industrial data and power connection technology worldwide, including in industrial sectors like transport, electromobility, renewable energy generation, automation, and mechanical engineering. HARTING manufactures many of its products in the United States.

5.      HARTING's slogan, "Pushing Performance," captures its aspiration to impress customers with the highest quality standards and global product innovations. Every day, its employees around the world help to ensure that HARTING does not rest on its laurels but concentrates on further developments and growth targets.

6.      By contrast, Phoenix was founded with a purpose to "distribute electrical engineering and industrial products" and the company was "strictly a sales operation." *See*

2

https://www.phoenixcontact.com/en-us/company/history#ex-qeosav (last accessed Apr. 23, 2026).

7.      By the 2020s, it became clear that industry, including the data centers at the heart of the internet and artificial intelligence, would become subject to enormous power demands to operate.  HARTING again was the innovator, supplying critical power connection technologies to enable the supply of that power, including products such as industrial plug connectors.

8.      Building on HARTING's history of innovation, rather than its own, and still focused on a sales-first philosophy, Phoenix has encroached upon one of HARTING's recent developments in the field of industrial plug connectors. With an eye on the growth of electrical interconnect in data centers, Phoenix began to release products in 2024 that replicate HARTING's unique retention pin design for certain high-voltage power connectors.

9.      On information and belief, Defendants make and sell such industrial plug connectors, used for industrial power supply connection in data centers and other commercial facilities, that infringe one or more claims of the Asserted Patents. Such industrial plug connectors are hereinafter referred to as the "Accused Products."

10.     By email on May 5, 2025, HARTING notified Phoenix representatives of the pending applications underlying the Asserted Patents and the impending infringement by one or more of the Accused Products and requested a meeting to address Phoenix's infringement. On May 14, 2025, HARTING and Phoenix representatives met in person to discuss the matter. Despite this direct engagement, Phoenix failed to take any corrective action or engage in meaningful discussions regarding its infringement. HARTING had little choice but to protect its hard-won intellectual property and market. Thus, on June 10, 2025, and again on September 26, 2025, HARTING brought suit in Europe for German utility models from the same families as the

Asserted Patents against Phoenix entities in the Munich Regional Court, Case Number 7 O 7573/25.

11.     Those legal actions did not deter Phoenix's infringement. Despite having knowledge of the Asserted Patents, or at least being willfully blind to their issuance, and knowledge that the Accused Products directly and/or indirectly infringe the Asserted Patents, Defendants continued making, using, selling, and offering for sale Accused Products in the United States and importing the Accused Products into the United States.

12.     Phoenix purports to have a new design of certain of the products at issue and has changed its U.S. website to obscure that, on information and belief, Phoenix continues to import and sell the Accused Products in the United States. Like the Accused Products, the purported new design seeks mating compatibility with HARTING connector products.

13.     Accordingly, HARTING seeks in this action, among other things, monetary damages for Phoenix's infringement, enhanced damages for the willful nature of Phoenix's conduct, as well as a judicial order enjoining such infringement.

## THE PARTIES

14.     Plaintiff HARTING Electric Stiftung & Co. KG is a company organized and existing under the laws of the Federal Republic of Germany, with its principal place of business at Marienwerderstraße 3 D-32339, Espelkamp, Germany.

15.     Phoenix Contact is a corporation organized and existing under the laws of the Federal Republic of Germany with a place of business at Flachsmarktstraße 8, D-32825, Blomberg, Germany. On information and belief, Phoenix Contact is the parent corporation of Phoenix USA and Phoenix Development.

4

16.     Phoenix USA is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 586 Fulling Mill Road, Middletown, PA 17057.

17.     Phoenix Development is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 586 Fulling Mill Road, Middletown, PA 17057.

## JURISDICTION AND VENUE

18.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

19.     This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, Defendants have committed acts of patent infringement in the United States, Texas, and this District by, *inter alia*, using, selling, and/or offering for sale the Accused Products in the United States, the State of Texas, and this District, and importing the Accused Products into the United States, the State of Texas, and this District.

20.     On information and belief, operating in concert, Defendants have derived substantial revenue from the sales of the infringing products to consumers and residents of the United States, the State of Texas, and this District and have engaged in marketing and promotional activities targeted at consumers and residents of the United States, the State of Texas, and this District.

21.     On information and belief, Phoenix Contact is responsible for the infringing activities identified in this Complaint, including at least designing the Accused Products or selling and/or offering to sell the Accused Products in the United States, the State of Texas, and this

District and/or importing the Accused Products into the United States the Accused Products. *See, e.g.*, Phoenix, *Cos. in the Grp.*, https://www.phoenixcontact.com/en-de/company/phoenix-contact-group/companies-in-the-group (last accessed Apr. 23, 2026).

22.     Phoenix Contact has established minimum contacts with the United States as whole and with Texas such that subjecting Phoenix Contact to personal jurisdiction in this Court will not offend traditional notions of fair play and substantial justice. Phoenix Contact has purposefully availed itself of the laws and protections of the United States and the State of Texas by knowingly supplying and/or contracting to supply Accused Products to be sold, offered for sale, imported, and used in the United States, the State of Texas, and this District.

23.     Phoenix Contact has targeted the United States by conducting regular business therein, directly or through agents and intermediaries, including the other Defendants, and has placed and continues to place its products into the stream of commerce through an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in the United States, the State of Texas, and this District. HARTING's claims for patent infringement arise directly from and/or relate to this activity. For example, Defendants' U.S. website, which is accessible within the United States, the State of Texas, and this District, offers for sale the Accused Products. *See, e.g.*, Phoenix, *HC-DCC06-HHFD-1TGESM32-PLBK – Housing*, https://www.phoenixcontact.com/en-us/products/housing-hc-dcc06-hhfd-1tgesm32-plbk-1551459 (last accessed Apr. 23, 2026). On information and belief, each and every component of the Accused Products was available for sale on Defendants' U.S. website at least as of December 15, 2025.

24.     On information and belief, Phoenix USA and Phoenix Development are each subsidiaries of Phoenix Contact, and are also responsible for the infringing activities identified in

this Complaint, including at least designing, manufacturing, selling and/or offering to sell the Accused Products in the United States, the State of Texas, and this District and/or importing the Accused Products into the United States. *See, e.g.*, Phoenix, *Cos. in the Group*, https://www.phoenixcontact.com/en-de/company/phoenix-contact-group/companies-in-the-group (last accessed Apr. 23, 2026); Phoenix, *Phoenix Contact USA*, https://www.phoenixcontact.com/en-us/company/phoenix-contact-usa (last accessed Apr. 23, 2026); tEDMag, *Phoenix Contact Opens New Dev. & Mfg. Facility for the Ams.*, https://tedmag.com/phoenix-contact-opens-new-development-and-manufacturing-facility-for-the-americas/ (last accessed Apr. 23, 2026). For example, Phoenix's U.S. website identifies a regular and established place of business in this District, specifically, a "Customer Technology Center" located at "3993 W. Sam Houston Parkway North[,] Suite 500[,] Houston, Texas 77043." Phoenix, *Contact*, https://www.phoenixcontact.com/en-us/service-and-support/contact (last accessed Apr. 23, 2026).

25.     Defendant Phoenix USA, alone and/or through the activities of its parent Phoenix Contact, has established minimum contacts with the United States as a whole and with Texas such that subjecting Phoenix USA to personal jurisdiction in this Court will not offend traditional notions of fair play and substantial justice. Phoenix USA's website further states that it "has developed a distribution network" that "services the vast majority of Phoenix Contact USA business." *Id*. Phoenix USA's website identifies a number of "authorized Phoenix Contract distributor[s]," *id*., in this District, including at least nine located in the City of Houston. *See* Phoenix USA, *Search for Distributors*, https://www.phoenixcontact.com/en-us/find-a-distributor?location=Houston (last accessed Apr. 23, 2026); Phoenix, *Sales Subsidiaries*,

https://www.phoenixcontact.com/en-de/company/phoenix-contact-group/sales-subsidiaries (last accessed Apr. 23, 2026).

26. Moreover, Phoenix USA takes affirmative actions to participate in and facilitate Defendants' supply of Accused Products to be sold, offered for sale, imported, and used in the United States, the State of Texas, and in this District. *See, e.g.*, Phoenix USA, *Service & Support*, https://www.phoenixcontact.com/en-us/service-and-support (last accessed Apr. 23, 2026) (providing, *inter alia*, "Advice and planning" "Procurement and delivery" and "Installation and operation" of the Accused Products). On information and belief, these actions by Phoenix USA include conducting business with and on behalf of Defendants, for example, by providing support for Defendants' Accused Products, *id*., promoting and marketing Defendants' Accused Products to customers, and engaging with customers to sell and service Accused Products. *Id*. Phoenix USA knows or reasonably should know that its participation and facilitation of Defendants' supply of Accused Products targets and reaches consumers in the State of Texas and in this District. By way of these and other actions Phoenix USA has established continuous and systematic contacts with the State of Texas and with this District.

27. Phoenix USA has also purposefully availed itself of the laws and protections of the United States and State of Texas by knowingly supplying and/or contracting to supply Accused Products to be sold, offered for sale, imported, and used in the United States, the State of Texas, and in this District. Phoenix USA has targeted the United States by conducting regular business therein, and it has placed and continues to place its products into the stream of commerce through an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in the United States, the State of Texas, and this District. For example, Defendants' website, which is accessible within the United States, the State of Texas, and this

8

District, offers for sale the Accused Products. *See, e.g.*, Phoenix, *HC-DCC06-HHFD-1TGESM32-PLBK – Housing*, https://www.phoenixcontact.com/en-us/products/housing-hc-dcc06-hhfd-1tgesm32-plbk-1551459 (last accessed Apr. 23, 2026). On information and belief, each and every component of the Accused Products was available for sale on Defendants' U.S. website at least as of December 15, 2025.

28.    Phoenix Development, alone and/or through the activities of its parent Phoenix Contact, has established minimum contacts with the United States as a whole and with Texas such that subjecting Phoenix USA to personal jurisdiction in this Court will not offend traditional notions of fair play and substantial justice. For example, Defendants' U.S. website states that Phoenix Development is "the logistics hub for North America," which, on information and belief, means that it is an essential actor, in association with the other Defendants, for Accused Products to be manufactured, sold, offered for sale, imported, and/or used in the United States, the State of Texas, and in this District. *See* Phoenix, *Cos. In the Grp.*, https://www.phoenixcontact.com/en-us/company/phoenix-contact-group/companies-in-the-group (last accessed Apr. 23, 2026).

29.    Phoenix Development has also purposefully availed itself of the laws and protections of the United States and State of Texas by knowingly designing, manufacturing, and supplying and/or contracting to supply Accused Products to be sold, offered for sale, imported, and used in the United States, the State of Texas, and in this District. Phoenix Development has targeted the United States by conducting regular business therein, and has placed and continues to place its products into the stream of commerce through an established distribution channel with the expectation and/or knowledge that they will be purchased by consumers in the United States, the State of Texas, and this District. For example, Defendants' U.S. website, which is accessible within the United States, the State of Texas, and this District, offers for sale the Accused Products.

9

*See,      e.g.,*      Phoenix,      *HC-DCC06-HHFD-1TGESM32-PLBK – Housing*,

https://www.phoenixcontact.com/en-us/products/housing-hc-dcc06-hhfd-1tgesm32-plbk-

1551459 (last accessed Apr. 23, 2026). On information and belief, each and every component of

the Accused Products was available for sale on Defendants' U.S. website at least as of December

15, 2025.

30.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) against

Defendant Phoenix Contact. Phoenix Contact is a foreign corporation that does not reside in the

United States, and it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

31.     Venue is proper as to Phoenix USA and Phoenix Development at least under 28

U.S.C. §§ 1391 and 1400(b) at least because they operate a regular and established place of

business, a "Customer Technology Center," located at 3993 W. Sam Houston Parkway North,

Suite 500, Houston, Texas 77043, and have committed and continue to commit acts of patent

infringement in this District giving rise to this action, including making, having made, using,

selling, and/or offering to sell in this District, and/or importing into this District the Accused

Products, either directly or through at least one of their agents, and/or inducing others to commit

or contributing to acts of patent infringement in this District. On information and belief, Phoenix

USA and Phoenix Development share common management, ownership, business locations,

distribution chains and platforms, and accused product lines and products involving related

technologies.

32.     Venue is also proper in this District as to Phoenix USA and Phoenix Development

because of their infringing actions directed towards and/or in this District. For example, they

conduct business on behalf of Defendants who supply Accused Products to be sold, offered for

sale, imported, and used in the United States, the State of Texas, and this District, thereby

infringing the Asserted Patents. As discussed above, Defendants' U.S. website, which is accessible within the United States, the State of Texas, and this District, offers for sale the Accused Products. And as also discussed above and below, Phoenix USA and Phoenix Development facilitate and participate in Defendants' placement of products into the stream of commerce through an established distribution channel—including with facilities and authorized distributors located in this District—with the expectation and/or knowledge that they will be purchased by consumers in the United States, the State of Texas, and this District. Their presence in this District and actions directed towards and/or in this District, as discussed above and below, including on behalf of Defendants, also give rise to the claims set forth herein.

### SINGLE ACTION

33.    This suit is commenced against Phoenix Contact GmbH & Co. KG, Phoenix Contact USA, Inc., and Phoenix Contact Development and Manufacturing, Inc. pursuant to 35 U.S.C. § 299 in a single action because, *inter alia*, on information and belief, Defendants are part of the same corporate structure and distribution chain for the making, having made, using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Accused Products. In addition, on information and belief, Defendants share common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.  Accordingly, Defendants operate as a unitary business venture and are jointly and severally liable for patent infringement relating to the industrial plug connector products made, used, sold, and/or offered for sale in the United States, and/or imported into the United States, by any or all of them.

34.    HARTING's right to relief against each of these Defendants arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, having made, using, selling, and/or offering to sell in the United States, and/or importing into the United

States, of the same accused industrial plug connector products. Additionally, questions of fact common to these Defendants will arise in this action, including whether the accused products infringe the Asserted Patents. Therefore, joinder of the Defendants is proper under 35 U.S.C. § 299.

**THE ACCUSED PRODUCTS**

35.    The Accused Products are industrial plug connectors, components thereof, and products containing the same, used for industrial power supply connection in data centers and other commercial facilities, including at least Phoenix's HC-DCC4 and HC-DDC06 Series, certain datasheets of which are attached hereto as Exhibit 1.

36.    Defendants design, manufacture, and sell (1) contact inserts, which are used with (2) housings, and (3) pins to complete an industrial plug connector assembly. For example, the Accused Products include, but are not limited to, infringing contact inserts HC-DCC4-I-CT-HW-M - Contact insert (p/n 1550585), HC-DCC4-I-CT-HW-F PDC - Contact insert (p/n 1861841), and HC-DCC4-I-CT-HW-F – Contact insert (p/n 1550584); infringing housings HC-DCC06-HHFD-1TGESM32-PLBK – Housing (p/n 1551459) and HC-DCC06-CHWD-1TGM32-PLRBK - Coupler connector (p/n 1551460); and infringing pins CK6,0-ED-16,00M PE DCC AG - Crimp contact (p/n 1559527) and CK6,0-ED-16,00F AG - Crimp contact (p/n 1559522).

37.    On information and belief, the Accused Products are manufactured and assembled by or for Defendants at facilities in Europe and/or the United States, including by at least Phoenix Contact and/or Phoenix Development. *See, e.g.*, Phoenix, *Cos. in the Grp.*, https://www.phoenixcontact.com/en-de/company/phoenix-contact-group/companies-in-the-group (last accessed Apr. 23, 2026).

38.    On information and belief, Defendants, directly or indirectly through affiliates, subsidiaries, agents, or other representatives, sell and/or offer for sale Accused Products in the

United States, and/or import Accused Products into the United States, including in connection with supplying and selling Accused Products to U.S. businesses, including subsidiaries and authorized distributors, for distribution. *See, e.g., id.*; Phoenix, *Sales Subsidiaries*, https://www.phoenixcontact.com/en-de/company/phoenix-contact-group/sales-subsidiaries (last accessed Apr. 23, 2026); Phoenix USA, *Search for Distributors*, https://www.phoenixcontact.com/en-us/find-a-distributor?location=Houston (last accessed Apr. 23, 2026).

### COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 12,407,124)

39.    Plaintiff incorporates by reference the allegations of paragraphs 1–38 above.

40.    U.S. Patent No. 12,407,124 (the "'124 patent") is titled "Connector Disengage Resistance Mechanism." The '124 patent was duly and legally issued by the U.S. Patent and Trademark Office on September 2, 2025. A copy of the '124 patent is attached as Exhibit 2.

41.    Plaintiff is the sole and exclusive owner of all right, title, and interest in the '124 patent and holds the exclusive right to enforce it and recover damages for infringement.

42.    The '124 patent relates to, *inter alia*, a plug and socket system that increases resistance to unintentional disengagements using a non-conductive retention pin. The plug connector includes a contact insert with six cavities arranged in a 3x2 matrix. Five of these cavities hold pin contacts that can carry electrical current. The remaining cavity contains the retention pin, which has a base portion secured within the plug insert and a protruding portion that engages a socket contact opening. Resilient deformation occurs when the pin engages with the socket contact upon insertion or removal. *See, e.g.*, '124 patent, Abstract.

43.    The '124 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. It is also presumed valid, and Phoenix, despite knowing of the

patent, has never challenged it at the U.S. Patent and Trademark Office, through *inter partes* review or otherwise.

44.     Defendants have directly infringed and continue to directly infringe, by themselves or through agents and intermediaries, at least claim 1 of the '124 patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering for sale and/or importing the Accused Products in and into the United States without authorization from HARTING.

45.     A claim chart illustrating Defendants' infringement of at least claim 1 of the '124 patent by representative Accused Products is attached as Exhibit 3 and incorporated herein by reference.

46.     On information and belief, Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '124 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others (including distributors, retailers, and end-users) to directly infringe by using, selling, offering to sell, and/or importing the Accused Products in and into the United States without authorization from HARTING. As one example, Defendants induce this direct infringement by creating and/or maintaining established distribution channels for the infringing industrial plug connector products. On information and belief, Defendants sell or otherwise provide the Accused Products, and components of the Accused Products, to distributors or other U.S.-based sales entities, knowing that these entities intend to make, use, offer for sale, and/or sell the Accused Products within the United States, the State of Texas, and this District in an infringing manner. On information and belief, Defendants provide specifications, datasheets, instruction manuals, and/or other materials that encourage and facilitate infringing uses of the Accused Products by customers and end users in a manner that Defendants know or should have known

would result in infringement and with the intent of inducing infringement. As discussed above, Defendants have had knowledge of the '124 patent since its issuance, based on communications dating to May 2025, and, alternatively, Defendants have knowledge of the '124 patent and its infringement through the filing of this Complaint.

47.     On information and belief, Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '124 patent under 35 U.S.C. § 271(c) by contributing to the direct infringement by others, such as Defendants' customers, distributors, and end users, in the United States, the State of Texas, and this District. For example, on information and belief, Defendants have contributed to, and currently contribute to, Defendants' customers' and end-users' infringement of the '124 patent through their affirmative acts of selling, offering to sell, either directly or through distributors, the Accused Products and components of the Accused Products. The Accused Products, and certain components of the Accused Products, have no substantial non-infringing uses and constitute a material part of the patented invention. Defendants are aware that the Accused Products, and components of the Accused Products, may be covered by one or more claims of the '124 patent.

48.     On information and belief, despite having knowledge of the '124 patent and knowledge that the Accused Products directly and/or indirectly infringe the '124 patent, Defendants have willfully continued their infringing conduct with the specific intent or willful blindness to the fact that their acts constitute infringement of the '124 patent, warranting enhanced damages under 35 U.S.C. § 284 and making this an exceptional case that merits an award of attorney fees to HARTING under 35 U.S.C. § 285.

15

49.     HARTING has been damaged as a result of Defendants' infringing conduct and is entitled to recover damages adequate to compensate for the infringement, including lost profits but not less than a reasonable royalty.

**COUNT II**
**(INFRINGEMENT OF U.S. PATENT NO. 12,482,985)**

50.     Plaintiff incorporates by reference the allegations of paragraphs 1–49 above.

51.     U.S. Patent No. 12,482,985 (the "'985 patent") is titled "High-Current Plug-In Connector System and Method for Setting Its Total Disconnection Force." The '985 patent was duly and legally issued by the U.S. Patent and Trademark Office on November 25, 2025. A copy of the '985 patent is attached as Exhibit 4.

52.     Plaintiff is the sole and exclusive owner of all right, title, and interest in the '985 patent and holds the exclusive right to enforce it and recover damages for infringement.

53.     The '985 patent relates to, *inter alia*, a high-current plug-in connector system comprising a plug-in connector and a mating plug-in connector that are configured to engage and disengage in a controlled manner such that the connector system resists unintended separation while still permitting disengagement using disconnection force. The plug-in connector includes a plug-in insert with a plurality of contact chambers, at least one of which includes a latching pin. The mating plug-in connector includes a corresponding mating plug-in insert with a plurality of mating contact chambers, one of which has a latching receptacle. In the assembled, plug-connected state, the latching surface of a latching hook in the receptacle engages the holding surface of the latching pin to help establish and maintain the mechanical connection between the plug-in connector and the mating plug-in connector. *See, e.g.*, '985 patent, Abstract.

54.     The '985 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. It is also presumed valid, and Phoenix, despite knowing of the

16

patent, has never challenged it at the U.S. Patent and Trademark Office, through *inter partes* review or otherwise.

55. Defendants have directly infringed and continue to directly infringe, by themselves or through agents and intermediaries, at least claim 1 of the '985 patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering for sale and/or importing the Accused Products in and into the United States without authorization from HARTING.

56. A claim chart illustrating Defendants' infringement of at least claim 1 of the '985 patent by representative Accused Products is attached as Exhibit 5 and incorporated herein by reference.

57. On information and belief, Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '985 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others (including distributors, retailers, and end-users) to directly infringe by using, selling, offering to sell, and/or importing the Accused Products in and into the United States without authorization from HARTING. As one example, Defendants induce this direct infringement by creating and/or maintaining established distribution channels for the infringing industrial plug connector products. On information and belief, Defendants sell or otherwise provide the Accused Products, and components of the Accused Products, to distributors or other U.S.-based sales entities, knowing that these entities intend to make, use, offer for sale, and/or sell the Accused Products within the United States, the State of Texas, and this District in an infringing manner. On information and belief, Defendants provide specifications, datasheets, instruction manuals, and/or other materials that encourage and facilitate infringing uses of the Accused Products by customers and end users in a manner that Defendants know or should have known

would result in infringement and with the intent of inducing infringement. As discussed above, Defendants have had knowledge of the '985 patent since its issuance, based on communications dating to May 2025, and, alternatively, Defendants have knowledge of the '985 patent and its infringement through the filing of this Complaint.

58.     On information and belief, Defendants have indirectly infringed and continue to indirectly infringe at least claim 1 of the '985 patent under 35 U.S.C. § 271(c) by contributing to the direct infringement by others, such as Defendants' customers, distributors, and end users, in the United States, the State of Texas, and this District. For example, on information and belief, Defendants have contributed to, and currently contribute to, Defendants' customers' and end-users' infringement of the '985 patent through their affirmative acts of selling, offering to sell, either directly or through distributors, the Accused Products and components of the Accused Products. The Accused Products, and certain components of the Accused Products, have no substantial non-infringing uses and constitute a material part of the patented invention. Defendants are aware that the Accused Products, and components of the Accused Products, may be covered by one or more claims of the '985 patent.

59.     On information and belief, despite having knowledge of the '985 patent and knowledge that the Accused Products directly and/or indirectly infringe the '985 patent, Defendants have willfully continued their infringing conduct with the specific intent or willful blindness to the fact that their acts constitute infringement of the '985 patent, warranting enhanced damages under 35 U.S.C. § 284 and making this an exceptional case that merits an award of attorney fees to HARTING under 35 U.S.C. § 285.

60.     HARTING has been damaged as a result of Defendants' infringing conduct and is entitled to recover damages adequate to compensate for the infringement, including lost profits but not less than a reasonable royalty.

## PRAYER FOR RELIEF

61.     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants, and grant the following relief:

A.     Entry of judgment in favor of Plaintiff against Defendants on all counts;

B.     A judgment that Defendants have infringed one or more asserted claims of the Asserted Patents;

C.     An award of damages adequate to compensate Plaintiff for Defendants' infringement, including supplemental damages for any post-verdict infringement up until entry of the final judgment;

D.     Permanent injunctions prohibiting Defendants, together with their officers, directors, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them, from infringing one or more claims of the Asserted Patents.

E.     An accounting of Defendants' infringing activities through trial and judgment;

F.     An award of pre- and post-judgment interest to the full extent allowed under the law;

G.     A determination that Defendants' infringement of the Asserted Patents has been and is willful, and an award of enhanced damages, up to and including trebling of the damages awarded to Plaintiff;

H.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of attorneys' fees, costs, and expenses, as provided by 35 U.S.C. § 285 and all

19

other applicable statutes and rules in common law that would be appropriate; and

I.     Any other relief the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby respectfully demands a jury trial on all issues so triable.

20

Dated:  April 24, 2026

Respectfully submitted,

**BECK REDDEN LLP**

By: *s/ Matthew P. Whitley*
    Matthew P. Whitley
    State Bar No. 24037703
    Federal I.D. No. 33589
    mwhitely@beckredden.com
    Leslie H. Tronche
    State Bar No.: 24078681
    Federal I.D. No. 1725410
    ltronche@beckredden.com
    1221 McKinney Street, Suite 4500
    Houston, Texas 77010
    Phone: 713.951.3700
    Fax: 713.951.3720

**COVINGTON & BURLING LLP**
    Stephen A. Marshall (*pro hac vice* to be filed)
    smarshall@cov.com
    Brian R. Nester (*pro hac vice* to be filed)
    bnester@cov.com
    Scott C. Burger (*pro hac vice* to be filed)
    sburger@cov.com
    One CityCenter, 850 Tenth Street, N.W.
    Washington, DC 2001
    Telephone: (202) 662-6000